**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DANA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>GHP PROFESSIONAL HEALTH SERVICES, LLC; GHP STAFFING SOLUTIONS LLC; and GINA SE | **Case No. 4:25-cv-05631**<br>FLSA Collective Action<br><br>District Judge Keith P. Ellison<br><br>Magistrate Judge Christina A. Bryan<br><br>Jury Trial Demanded |

# FIRST AMENDED COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Dana Williams brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2. GHP Professional Health Services, LLC ("GHP Professional"), GHP Staffing Solutions LLC ("GHP Staffing"), and Gina Se (together, "GHP") failed to pay Williams and other hourly workers like her overtime as required by federal law.

3. Instead, GHP improperly classified Williams and workers like her as independent contractors paid them at their same hourly rates, even when they worked more than 40 hours in a workweek.

4. This collective action seeks to recover the unpaid wages and other damages owed to Williams and other hourly workers for GHP.

5. To add insult to injury, when GHP found out about this lawsuit by Williams to pursue her rights under the FLSA, GHP immediately terminated Williams.

6. Williams' pursuit of rights under the FLSA—regardless of whether she is ultimately found correct—is protected activity under the FLSA.

7. GHP's termination of Williams for raising legal concerns about her rights under the law violates the anti-retaliation provisions of the FLSA.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because GHP Professional and GHP Staffing's principal places of business are in this District.

10. GHP Professional and GHP Staffing are headquartered in this District.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Se resides in this District.

## PARTIES

12. **Plaintiff Dana Williams** is a natural person.

13. Williams was, at all relevant times, an employee of GHP.

14. Williams was an hourly-paid employee of GHP.

15. Williams worked for GHP from January 2020 until December 2025.

16. Williams seeks to represent a collective of similarly situated employees under 29 U.S.C. § 216(b) (the "FLSA Collective"). The FLSA Collective is defined as:

> **All persons currently or formerly employed by, or working on behalf of, GHP Professional, GHP Staffing, and/or Gina Se, and/or any of their subsidiaries or alter egos, including GHP Global Health Services LLC, in the United States who were paid "straight time for overtime" at any point from November 21, 2022, until judgment is entered.**

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant GHP Professional Health Services, LLC (“GHP Professional”)** is a domestic limited liability company.

19. GHP Professional has been served and appeared in this matter.

20. At all relevant times, GHP Professional was a member of GHP Global Health Services LLC (“GHP Global”).

21. At all relevant times, GHP Professional exerted operational control over GHP Global.

22. At all relevant times, GHP Professional had the authority to set pay practices for employees of GHP Global.

23. At all relevant times, GHP Professional had the authority to determine the amount paid to employees of GHP Global.

24. At all relevant times, GHP Professional had the authority to determine the schedules worked by employees of GHP Global.

25. At all relevant times, GHP Professional had the authority to hire employees of GHP Global.

26. At all relevant times, GHP Professional had the authority to fire employees of GHP Global.

27. At all relevant times, GHP Professional had the authority to discipline employees of GHP Global.

28. At all relevant times, GHP Professional had the authority to supervise employees of GHP Global.

29. **Defendant GHP Staffing Solutions LLC (“GHP Staffing”)** is a domestic limited liability company.

30. GHP Staffing has been served and appeared in this matter.

31. **Defendant Gina Se** is a natural person.

32. Gina Se is a resident and citizen of Texas.

33. Gina Se has been served and appeared in this matter.

34. At all relevant times, Gina Se was the President and Chief Operating Officer of GHP Professional.

35. At all relevant times, Gina Se exerted operational control over GHP Professional.

36. At all relevant times, Gina Se had the authority to set pay practices for employees of GHP Professional.

37. At all relevant times, Gina Se had the authority to determine the amount paid to employees of GHP Professional.

38. At all relevant times, Gina Se had the authority to determine the schedules worked by employees of GHP Professional.

39. At all relevant times, Gina Se had the authority to hire employees of GHP Professional.

40. At all relevant times, Gina Se had the authority to fire employees of GHP Professional.

41. At all relevant times, Gina Se had the authority to discipline employees of GHP Professional.

42. At all relevant times, Gina Se had the authority to supervise employees of GHP Professional.

43. The employees that Gina Se could hire, fire, discipline, and supervise for GHP Professional included Williams.

44. At all relevant times, Gina Se was the President and Chief Operating Officer of GHP Staffing.

45. At all relevant times, Gina Se exerted operational control over GHP Staffing.

46. At all relevant times, Gina Se had the authority to set pay practices for employees of GHP Staffing.

47. At all relevant times, Gina Se had the authority to determine the amount paid to employees of GHP Staffing.

48. At all relevant times, Gina Se had the authority to determine the schedules worked by employees of GHP Staffing.

49. At all relevant times, Gina Se had the authority to hire employees of GHP Professional.

50. At all relevant times, Gina Se had the authority to fire employees of GHP Staffing.

51. At all relevant times, Gina Se had the authority to discipline employees of GHP Staffing.

52. At all relevant times, Gina Se had the authority to supervise employees of GHP Staffing.

53. The employees that Gina Se could hire, fire, discipline, and supervise for GHP Staffing included Williams.

54. At all relevant times, Gina Se was a manager of GHP Global.

55. At all relevant times, Gina Se was the Managing Partner of GHP Global.

56. At all relevant times, Gina Se exerted operational control over GHP Global.

57. At all relevant times, Gina Se had the authority to set pay practices for employees of GHP Global.

58. At all relevant times, Gina Se had the authority to determine the amount paid to employees of GHP Global.

59. At all relevant times, Gina Se had the authority to determine the schedules worked by employees of GHP Global.

60. At all relevant times, Gina Se had the authority to hire employees of GHP Global.

61. At all relevant times, Gina Se had the authority to fire employees of GHP Global.

62. At all relevant times, Gina Se had the authority to discipline employees of GHP Global.

63. At all relevant times, Gina Se had the authority to supervise employees of GHP Global.

64. GHP Professional, GHP Staffing, and Gina Se own and/or operate private duty health care providers.

65. The providers owned and/or operated by GHP Professional, GHP Staffing, and Gina Se include GHP Professional, GHP Staffing, and GHP Global.

66. GHP Professional, GHP Staffing, and Gina Se operate this provider as a single integrated employer under the FLSA.

67. At all relevant times, the operation of Defendants and GHP Global was and is interrelated.

68. At all relevant times, Defendants and GHP Global operated for a common business purpose, to provide related private duty health care to clients.

69. At all relevant times, Defendants and GHP Global had centralized/shared back-office operations, including but not limited to human resources, accounting, marketing, risk management, financial operations, and legal compliance.

70. At all relevant times, Gina Se exerted operational control over GHP Professional, GHP Staffing, and GHP Global, and each of their subsidiaries and alter egos.

71. At all relevant times, GHP Professional and GHP Staffing exerted operational control over one another, and each of their subsidiaries and alter egos.

72. The subsidiaries and alter egos over which GHP Professional and/or GHP Staffing exerted operational control include GHP Staffing.

73. At all relevant times, GHP Professional and GHP Staffing substantially controlled the terms and conditions of employment for workers of one another, and each of their subsidiaries and alter egos.

74. The subsidiaries and alter egos over which GHP Professional and/or GHP Staffing controlled the terms and conditions of employment for workers include GHP Staffing.

75. At all relevant times, GHP Professional and GHP Staffing had a common control and management of labor relations regarding employees of one another, and each of their subsidiaries and alter egos.

76. The subsidiaries and alter egos over which GHP Professional and/or GHP Staffing had a common control and management of labor relations regarding employees include GHP Staffing.

77. Defendants operate as and constitute a single integrated employer under the FLSA.

78. For example, Gina Se was the President and Chief Operating Officer of GHP Professional and GHP Staffing.

79. Gina Se was also the Managing Partner of GHP Global.

80. Defendants operated GHP Professional, GHP Staffing, and GHP Global from the same website.

81. Defendants' employees worked and continue to work interchangeably for one another.

82. Defendants employed and/or jointly employed Williams and the Similarly Situated Workers.

83. Defendants are joint employers for purposes of the FLSA.

**COVERAGE UNDER THE FLSA**

84. At all relevant times, GHP Professional was an employer of Williams within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

85. At all relevant times, GHP Professional was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

86. At all relevant times, GHP Professional has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

87. During at least the last three years, GHP Professional was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

88. During at least the last three years, GHP Professional has employed many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

89. GHP Professional employs many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

90. At all relevant times, GHP Staffing was an employer of Williams within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

91. At all relevant times, GHP Staffing was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

92. At all relevant times, GHP Staffing has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

93. During at least the last three years, GHP Staffing was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

94. During at least the last three years, GHP Staffing has employed many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

95. GHP Staffing employs many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

96. At all relevant times, Gina Se was an employer of Williams within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

97. At all relevant times, Gina Se was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

98. At all relevant times, Gina Se has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

99. During at least the last three years, Gina Se was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

100. During at least the last three years, Gina Se has employed many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

101. Gina Se employs many workers, including Williams and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

102. During at least the last three years, GHP has had gross annual sales in excess of $500,000.

103. The goods and materials handled, sold, or otherwise worked on by Williams and other GHP employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, as well as pharmaceuticals.

104. GHP treated Williams as an employee and uniformly dictated the pay practices to which Williams was subjected.

105. GHP's misclassification of Williams as an independent contractor does not alter Williams' employee status for purposes of this FLSA action.

106. GHP treated the FLSA Collective as an employee and uniformly dictated the pay practices to which the FLSA Collective members were subjected.

107. GHP's misclassification of the FLSA Collective as an independent contractor does not alter the FLSA Collective members' employee status for purposes of this FLSA action.

## FACTS RE WAGE CLAIMS

108. GHP provides private duty health care services. GHP, About Us, https://www.ghphealthcare.com/ (last accessed Oct. 27, 2025).

109. GHP needs home health care workers to perform these services.

110. For example, without home health care workers, GHP could not provide home health care services.

111. While exact job titles and job duties may slightly differ, Williams and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

112. Throughout her employment with GHP, Williams was classified as an independent contractor.

113. The work Williams performed is an essential part of GHP's core business.

114. During Williams' employment with GHP and while she was classified as an independent contractor, GHP exercised control over all aspects of her job.

115. Williams was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in her same job position) to perform her job duties.

116. During the time that Williams worked with GHP, she worked exclusively for GHP.

117. GHP controlled all the significant or meaningful aspects of the job duties performed by Williams.

118. GHP ordered the hours and locations Williams worked, tools used, and rate of pay received.

119. Even though Williams often worked away from GHP's offices without the presence of a direct GHP supervisor, GHP still controlled all aspects of Williams' job activities by enforcing mandatory compliance with GHP's policies and procedures.

120. No real investment was required of Williams to perform her job.

121. GHP determined Williams' opportunity for profit and loss.

122. Williams did not provide the equipment she worked with on a daily basis. GHP made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Williams works.

123. Williams did not incur operating expenses like rent, payroll, marketing, and insurance.

124. Williams was economically dependent on GHP during her employment.

125. GHP set Williams' rate of pay and her work schedule.

126. GHP directly determined Williams' opportunity for profit and loss, as Williams' earning opportunity was based on the amount of time GHP scheduled her to work.

127. For the purposes of an unpaid overtime claim, very little skill, training, or initiative was required of Williams to perform her job duties.

128. Indeed, the daily and weekly activities of Williams and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by GHP.

129. Virtually every job function of the Similarly Situated Workers was pre-determined by GHP and/or its clients, including the equipment to use at a job site, the schedule of work, and related work duties.

130. Williams and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

131. Moreover, the job functions of Williams and the Similarly Situated Workers were primarily manual labor/technical in nature that did not require a college education or other advanced degree.

132. For the purposes of an unpaid overtime claim, Williams and the Similarly Situated Workers performed substantially similar job duties related to healthcare services.

133. Williams performed routine manual and technical labor duties that were largely dictated by GHP and/or its clients.

134. Williams was not employed by GHP on a project-by-project basis.

135. Williams was not paid by GHP on a project-by-project basis.

136. All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which GHP dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Williams and were denied overtime pay as a result of the same illegal pay practice.

137. Williams was an hourly employee of GHP.

138. GHP never paid Williams a salary.

139. GHP never paid Williams on a fee basis.

140. GHP paid Williams by the hour.

141. Williams reported the hours she worked to GHP on a regular basis.

142. Williams' hours are reflected in GHP's records.

143. GHP paid Williams at the same hourly rate for all hours worked in a workweek.

144. GHP did not pay Williams an overtime premium for all hours worked in excess of 40 in a workweek.

145. Instead, GHP paid Williams "straight time"—that is, her regular hourly rate—for all overtime hours she worked.

146. Williams normally worked more than 40 hours in a week.

147. For example, for the one-week pay period from April 6 to 8, 2025, Williams worked a total of 69 hours for GHP.

148. For all 69 hours, GHP paid Williams at the same hourly rate, including all 29 overtime hours she worked.

149. Thus, rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Williams only received "straight-time" pay for her overtime hours worked.

150. This "straight-time-for-overtime" payment scheme violates the FLSA.

151. GHP was aware of the overtime requirements of the FLSA.

152. GHP nonetheless failed to pay certain hourly employees, such as Williams, overtime for all hours worked over 40 in a workweek.

153. GHP's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

## FACTS RE RETALIATION

154. This lawsuit was filed on November 21, 2025.

155. GHP Professional was served on December 29, 2025.

156. GHP Professional was served at 6:23 pm on December 29, 2025.

157. GHP Professional's agent for service of process is Joey Se.

158. Joey Se is the husband of Gina Se.

159. GHP Staffing was served on December 29, 2025.

160. GHP Staffing was served at 6:23 pm on December 29, 2025.

161. GHP Staffing's agent for service of process is Gina Se.

162. Gina Se, individually, was served on December 29, 2025.

163. Gina Se was served personally on December 29, 2025, both in her individual capacity and as the agent for service of process of GHP Staffing.

164. Gina Se was served at 6:24pm on December 29, 2025.

165. Gina Se and Joey Se were served at the same time on December 29, 2025.

166. Immediately upon being served, Gina Se contacted Williams.

167. Gina Se demanded Williams dismiss this lawsuit or be terminated.

168. Gina Se then terminated Williams.

169. GHP terminated Williams on the same date that she was served with this lawsuit—December 29, 2025.

170. GHP terminated Williams within one hour of being served with this lawsuit.

171. GHP retaliated against Williams as a direct result of Williams' having raised concerns regarding her rights under the FLSA.

172. GHP terminated Williams as a direct result of Williams' having raised concerns regarding her rights under the FLSA.

173. If Williams had not raised concerns regarding her rights under the FLSA, GHP would not have retaliated against her.

174. If Williams had not raised concerns regarding her rights under the FLSA, GHP would not have terminated her.

175. GHP retaliated against Williams as a direct result of Williams' having brought the FLSA claims in this lawsuit.

176. GHP terminated Williams as a direct result of Williams' having brought the FLSA claims in this lawsuit.

177. If Williams had not brought the FLSA claims in this lawsuit, GHP would not have retaliated against her.

178. If Williams had not raised concerns regarding her rights under the FLSA, GHP would not have terminated her.

179. A disagreement over the merits of concerns that an employee raises about their wage is not an excuse for an employer like Fidelity to retaliate against them. *E.g.*, *Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7126554 (D. Neb. Dec. 3, 2020); *Stewart v. VSMB, LLC*, No. 1:19-CV-22593-UU, 2020 WL 4501937, at *2 (S.D. Fla. June 29, 2020); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341 (4th Cir. 2008).

180. Employers like GHP should not, and may not, retaliate against an employee such as Williams because they report, raise concerns, or file a claim for fair pay. 29 U.S.C. § 215(a)(3).

## Collective Action Allegations

181. GHP's illegal "straight time for overtime" policy extends well beyond Williams.

182. It is the "straight time for overtime" payment plan that is the "common policy or plan that violate[s] the law." *McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-93366 PSG (MRWx), 2013 WL 228334, at *2 (C.D. Cal. Jan. 22, 2013) (internal quotations omitted)); *see also*, *e.g.*, *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006) (certifying "straight time for overtime" claim for collective treatment); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (same).

183. GHP has paid many hourly workers according to the same unlawful scheme.

184. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

185. The workers impacted by GHP's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## FIRST CAUSE OF ACTION–WAGE VIOLATIONS OF THE FLSA AS TO WILLIAMS AND THE FLSA COLLECTIVE

186. Williams incorporates all allegations in paragraphs 1 through 185.

187. By failing to pay Williams and the FLSA Collective members overtime at 1.5 times their regular rates, GHP violated the FLSA. 29 U.S.C. § 207(a).

188. GHP owes Williams and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

189. GHP owes Williams and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

190. GHP knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay overtime compensation to Williams and the FLSA Collective members.

191. Because GHP knew, or showed reckless disregard for whether, its pay practices violated the FLSA, GHP owes these wages for at least the past three years.

192. GHP's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

193. Because GHP's decision not to pay overtime was not made in good faith, GHP also owes Williams and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

194. Williams and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION–UNLAWFUL RETALIATION UNDER THE FLSA AS TO WILLIAMS

195. Williams incorporates all allegations in paragraphs 1 through 185.

196. The FLSA provides a cause of action for retaliation for an employer who discriminates in any way against an employee for exercising their legal rights under the FLSA. 29 U.S.C. § 215(a)(3).

197. GHP retaliated against Williams for raising concerns regarding her rights under the FLSA.

198. GHP's retaliatory actions subjected Williams to unfair and illegal treatment.

199. GHP's actions in response to Williams' concerns were undertaken with a retaliatory motive.

200. GHP's retaliatory actions would deter a reasonable person from engaging in activity protected by the FLSA.

201. GHP knew, or showed reckless disregard for whether, its actions in retaliating against Williams were in violation of the FLSA.

202. GHP's retaliatory actions have caused Williams to suffer damages, including lost wages, emotional distress, and additional attorneys' fees, costs, and expenses.

203. Williams is entitled to all damages and remedies allowed under the anti-retaliation provision of the FLSA, including without limitation employment, reinstatement, promotion, lost wages, liquidated damages, emotional distress damages, and attorneys' fees, costs, and expenses. 29 U.S.C. § 216(b).

## RELIEF SOUGHT

Williams prays for judgment against GHP as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding GHP liable for violations of federal wage laws with respect to Williams and the FLSA Collective;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Williams and the FLSA Collective;

d. For a judgment awarding attorneys' fees to Williams and the FLSA Collective;

e. For a judgment awarding costs of this action to Williams the FLSA Collective;

f. For a judgment awarding Williams all legal and equitable relief for GHP's retaliation, including without limitation, employment, reinstatement, promotion, lost wages, liquidated damages, penalties, and emotional distress damages;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Williams and the FLSA Collective; and

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***

**Matthew S. Parmet**
TX Bar # 24069719
S.D. Tex. ID # 1076547
**PARMET LAW PC**
2 Greenway, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**Attorneys for Plaintiff**

**JURY DEMAND**

Williams demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*

**Matthew S. Parmet**